1
2
3                        UNITED STATES DISTRICT COURT
4                            DISTRICT OF NEVADA
5   JOSHUA CALEB SHUE,                         Case No. 2:20-cv-02025-KJD-BNW
6                             Petitioner,
7          v.                                            **ORDER**
8   JEREMY BEAN,[1] *et al.*,
9                             Respondents.

10         Petitioner Joshua Caleb Shue is sentenced to an aggregate of 10 years to life imprisonment

11  in Nevada for multiple counts of use of a minor as the subject of a sexual portrayal in a

12  performance, one count of child abuse and neglect, and one count of possession of a visual

13  presentation depicting sexual conduct of a child. (ECF No. 62-5.) Shue filed a petition for writ of

14  habeas corpus under 28 U.S.C. § 2254 (ECF No. 23) alleging (1) trial counsel provided ineffective

15  assistance in violation of the Sixth Amendment by failing to consult a forensic computer expert;

16  (2) insufficient evidence supports some of Shue's convictions in violation of due process under

17  the Fifth Amendment; and (3) Shue's sentence is disproportionate to the crimes in violation of the

18  Eighth Amendment. For the reasons discussed below, the petition is denied, a certificate of

19  appealability is denied, and the Clerk of the Court is directed to enter judgment.

20  **I.    Background[2]**

21         Shue and Anita Iral began dating in the summer of 2010. In January of 2011 Shue

22  maintained his separate residence but started staying at Anita's house about four nights a week

---

[1] The state corrections department's inmate locator page indicates Shue is incarcerated at High Desert State Prison and that Jeremy Bean is the warden for that facility. *See* HDSP_Faciltiy (nv.gov). The Court will therefore direct the Clerk of the Court to substitute Jeremy Bean for Respondent Calvin Johnson, under, *inter alia,* Fed. R. Civ. P. 25(d).

[2] The Court summarizes the relevant state court record for consideration of the issues. The Court makes no credibility findings or factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes the same solely as background to the issues presented in this case. No assertion of fact made in describing statements, testimony, or other evidence in the state court, constitutes a finding by the Court. Failure to mention a category or piece of evidence does not signify it was overlooked in considering the claims.

until his arrest in August of 2012. Anita lived with three of her children: her daughter, H.I.,[3] who was 15–17 years old during that time, and her sons, K.I. and F.I., who were under 14 years of age. (ECF Nos. 33-1 at 31–37, 45–49, 51–79, 160–61; 34-1 at 11–12, 20–22, 70–78, 102–09.)

H.I. testified she complained to Anita that Shue inappropriately talked to her, touched her, and photographed her cleavage, but Anita said nothing. H.I. did not tell Shue to stop because she was uncomfortable with him. In August of 2012, H.I. was in her kitchen putting roses into a vase that she received from her boyfriend when Shue took a picture underneath her skirt. This made H.I. uncomfortable, and she asked him to delete the photograph. He did. Later that night, when she tried to go to sleep, Shue kissed H.I. on the mouth, which made her feel "uncomfortable and scared." She did not recall the nature of the kiss including whether it was a "peck." The police were contacted the next day. (ECF Nos. 33-1 at 38–42, 97–100, 113–14; 34-1 at 39–44.)

H.I. told a Las Vegas Metropolitan Police Department ("Metro") detective that Shue took a photograph under her skirt, kissed her, and told H.I. he had a relationship with Anita to be close to H.I. Shue told the Metro detective that he kissed H.I. on the cheek but not romantically. He admitted taking a photograph under H.I.'s skirt, but said he was "playing around," and that he deleted the photograph because H.I. was embarrassed by it. Shue admitted he found H.I. very attractive and told H.I. he was only with Anita because he had romantic feelings for H.I. He claimed he would never act on those feelings because she was a young lady, and he was with Anita. Shue told the detective there were things on his laptop computer that were not "on the up-and-up" and Metro seized Shue's laptop from his desk at his separate residence. Metro also seized a video camera and a regular camera, and discovered lubrication and condoms inside Shue's desk drawer, and baby wipes in his room. (ECF No. 32-1 at 17–21, 27–29, 36, 127–38, 151–52, 170–77.)

Metro Detective Vicente Ramirez conducted forensic examinations of Shue's laptop, cellphone, and camera. The cellphone had been reset and wiped clean. Ramirez extracted from Shue's digital camera a photograph taken up a female's skirt that had been erased. He also

---

[3]The Local Rules of Practice state: "[p]arties must refrain from including—or must partially redact, where inclusion is necessary—[certain] personal-data identifiers from all documents filed with the court, including exhibits, whether filed electronically or in paper, unless the court orders otherwise." LR IA 6-1. The rule directs that only the initials of minors should be used. *Id.* Witnesses "H.I.," "K.I.," and "F.I.," were minors at the time of the offenses.

recovered photographs from Shue's laptop. Some of the photographs were "of what appears to be a boy under the age of 16 nude in the shower exposing his penis and his buttocks," lying prone on a bed exposing his penis, and similar content. Another photograph depicted two males, including one who appeared to be under the age of 16, engaged in fellatio. (*Id.* at 43–50, 61–62, 115–17.)

Ramirez extracted a working copy of the contents of Shue's laptop, locked away the laptop, and examined only the working copy. No one outside the forensic unit could access the forensic computers and Ramirez could not unintentionally alter any images. Ramirez testified Shue's laptop was not password protected and had two profiles—one for Shue and the other for the public—but he could not ascertain the public user. (*Id.* at 40, 51, 79–82, 95–97, 103–04.)

Ramirez discovered hidden folders on Shue's laptop, entitled "Yummm" and "Hmmm." The folders bore creation dates in 2011. Some of the videos contained inside those folders bore creation dates in 1979, 1980, and 2007 but depicted H.I. and K.I. in the nude inside their bathroom during 2011 and 2012. Ramirez agreed some of those dates were inconsistent with the dates of the offenses. Ramirez explained that dates on devices may be changed by the device's user or may depict a factory-default date, and when a video is created on a device set with a date and time, that date and time will remain with the video when it is transferred to another device (even if the date is in error). This is why he said "it would be hard to say . . . a specific date" when the videos were downloaded to Shue's laptop. (ECF Nos. 32-1 at 51–59, 95–96, 99–101; 42-2.)

At trial, H.I. identified videos extracted from Shue's laptop as filmed on different days. Some videos depicted Shue setting up the video camera in the bathroom used by H.I. and her brothers. H.I. was unaware of the videos until the police found them on Shue's laptop. Some videos depict H.I. in the nude when she was 15 or 16 years old, preparing for a shower, coming out of the shower, dancing, singing, shaving, putting a pad in her underwear, using a tampon, and applying suntan spray. One video depicted H.I. in a hotel bathroom in California when she was 16 years old. Some videos depict K.I. exiting the shower and using the toilet when he was 12 and 13 years old. H.I. admitted she used Shue's laptop once or twice and that she photographed herself naked but denied posting or sharing those photographs. (ECF No. 33-1 at 42–61, 64–81, 100–02.)

///

Shue testified that before trial, he had not seen the photographs of nude young men found on his laptop and had no idea how they got there. He agreed that H.I. is attractive but denied he was sexually attracted to her or taking pictures of her to gain sexual gratification. He testified he took the photograph under her skirt because she kept bending over and showing her buttocks and he thought the photograph would make her stop doing it. He said he erased that photograph after she told him she did not like the size of her buttocks and asked him to erase it. Shue claimed he kissed H.I. on the cheek to send her to bed, and that he was drunk on the night she claimed he kissed her on the mouth. He admitted he previously appeased her when she was upset and crying and asking whether he would ever view her romantically or sexually, by telling her "of course," but she was too young, and he was with her mother. He admitted he and Anita filmed their sexual activities, some of which occurred in the bathroom and shower. He said he told H.I., who had access to his laptop, that it contained pictures of he and Anita having sex. (ECF Nos. 34-1 at 65, 118–29, 131–36, 147; 35-1 at 70–71, 80.)

Shue denied filming the children in the bathroom and stated he never saw the videos of the children in the bathroom before his trial. He explained that when he told the detectives there might be some things that aren't on the up-and-up on his computer, he was referring to videos taken at the Burning Man festival of adults having sex and acting crazy. He explained that the condoms and other personal items found at his residence were left over from his attendance at Burning Man in 2009. Shue denied naming the folders on his laptop, "Yummm" and "Hmmm." Shue claimed it was possible H.I. did it. He stated H.I. was the only other person who had access to both video and the computer and his laptop contained a video-editing program. Shue agreed he could be seen setting up the camera in some of the videos depicting H.I. and K.I. in the bathroom but claimed the portions of the videos that depicted him setting up the camera originated from videos he and Anita took of their sexual activities. He speculated that H.I., who he claimed was proficient at using computer applications for photographs and videos, must have connected that portion of his videos with her videos. (ECF Nos. 34-1 at 101, 115–22, 132–36, 153–67; 35-1 at 58–59, 63.)

A Nevada jury convicted Shue of one count of open or gross lewdness, one count of child abuse & neglect, 10 counts of possession of visual presentation depicting sexual conduct of a child,

and 29 counts of use of a minor as the subject of a sexual portrayal in a performance. (ECF No. 62-5.) The Supreme Court of Nevada vacated 9 convictions for possession of a visual presentation depicting sexual conduct of a child and the conviction for open or gross lewdness, and otherwise affirmed. (ECF No. 24-5 at 18.) Shue was denied postconviction relief. (ECF No. 24-10.)

## II.      Governing Legal Standards

### A.      Antiterrorism and Effective Death Penalty Act (AEDPA)

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the legal standards for consideration of the Petition:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established Supreme Court precedent, under § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court's decision is an unreasonable application of clearly established Supreme Court precedent under 28 U.S.C. § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . [rather] [t]he state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10, 412) (internal citation omitted).

The Supreme Court has instructed that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult-to-meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.") (internal citations omitted). The petitioner carries the burden of proof. *See Cullen*, 563 U.S. at 181 (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### B.    Effective-Assistance-of-Counsel

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 24 (2013). A petitioner claiming ineffective assistance of counsel ("IAC") must demonstrate (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A petitioner making an IAC claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. In considering such claims, a court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* To establish prejudice, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

### C.    Procedural Default

"A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in accordance with state procedures." *Shinn v.*

*Ramirez*, 596 U.S. 366, 371 (2022). Where a petitioner fails to do so and therefore "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule," federal habeas review "is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To demonstrate cause for a procedural default, a petitioner "must establish that some external and objective factor impeded his efforts to comply with the state's procedural rule." *Hiivala v. Wood*, 195 F.3d 1098, 1105 (9th Cir. 1999) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "[T]o establish prejudice, the prisoner must show not merely a substantial federal claim, such that 'the errors at . . . trial created a possibility of prejudice,' but rather that the constitutional violation 'worked to his *actual* and substantial disadvantage.'" *Shinn*, 596 U.S. at 379–80 (emphasis in original) (citing *Murray*, 477 U.S. at 494 and quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

A petitioner may overcome cause for a procedural default where (1) the claim of ineffective assistance of trial counsel is a "substantial" claim; (2) the "cause" consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim[;]" and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."[4] *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 14, 18 (2012) and relying on *Coleman*, 501 U.S. 722). An ineffective-assistance-of-trial-counsel claim "is insubstantial" if it lacks merit or is "wholly without factual support." *Martinez*, 566 U.S. at 14–16 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)).

///

///

---

[4] Nevada law requires prisoners to raise ineffective assistance of counsel claims for the first time in a state petition seeking postconviction review, which is the initial collateral review proceeding for purposes of applying the *Martinez* rule. *See Rodney v. Filson*, 916 F.3d 1254, 1259–60 (9th Cir. 2019).

### III.    Discussion[5]

#### A.    Ground I—Ineffective Assistance of Trial Counsel

Shue alleges trial counsel's failure to consult a forensic computer expert constitutes ineffective assistance of counsel. He asks this Court to consider the declaration of Senior Digital Forensic Investigator Leon Mare (ECF No. 24-13), submitted for the first time in this proceeding. Shue claims the declaration supports his claim that trial counsel was ineffective in failing to consult an expert to assess the integrity of the videos and photographs found on Shue's laptop and investigate the factually impossible dates associated with those items. Shue claims counsel's inaction prejudiced him because it limited counsel's ability to effectively cross-examine the State's expert, and prevented Shue from presenting an alibi defense and a stronger defense that someone else downloaded the files to Shue's laptop and that the files were corrupted or altered. (ECF Nos. 23 at 7–10; 70 at 6–10.) The Court previously found Ground I technically exhausted but procedurally defaulted and deferred deciding whether Shue can overcome the procedural default until the Court reviews the merits of the petition. (ECF No. 50 at 4.) The respondents contend this Court may not consider Mare's declaration because Shue cannot meet the prerequisites under 28 U.S.C § 2254(e)(2). They contend that even if the declaration is considered, Mare provides no facts to support Shue's claim that he was prejudiced by trial counsel's failure to hire a forensic computer expert. (ECF No. 64 at 14–15.) For the reasons discussed below, the Court considers the contents of Mare's declaration but concludes Shue fails to establish a substantial claim of ineffective assistance of trial counsel, and Shue therefore has not overcome the procedural default of this claim under *Martinez*.

---

[5] Shue alleges the standard of review in 28 U.S.C. § 2254(d) violates the Suspension Clause (U.S. Const. art. I, § 9, cl. 2); principles of separation of powers (U.S. Const. art. I, II, and III); the ban on cruel and unusual punishments (U.S. Const. amend. VIII, XIV); and due process (U.S. Const. amend. V, XIV). (ECF No. 23 at 7.) Respondents did not address these claims in their motion to dismiss or Answer. *See Smith v. Ryan*, 823 F.3d 1270, 1285 (9th Cir. 2016) (addressing the merits of a procedurally defaulted claim where the State waived the affirmative defense); *see also McDaniels v. Kirkland*, 813 F.3d 770, 775 n.3 (9th Cir. 2015) (same). Shue cites no facts to support these claims and concedes the Ninth Circuit Court of Appeals has rejected arguments that AEDPA violates the suspension clause and separation of powers doctrine. (ECF No. 70 at 8) (citing *Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007)). Rule 2(c) of the Rules Governing § 2254 Cases requires a federal habeas petitioner specify all grounds for relief and "the facts supporting each ground." Conclusory allegations unsupported by specific facts may be summarily dismissed. *Mayle v. Felix*, 545 U.S. 644, 649, 655–56 (2005); *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The Court dismisses these claims with prejudice as conclusory and without merit.

### 1.    Applicable Legal Principles

Generally, the merits of the claims in a federal habeas corpus petition are decided on the record that was before the state court. *Cullen*, 563 U.S. at 180–81. Before facilitating evidence that was not developed in the state-court proceedings, federal habeas courts must first determine such evidence "could be legally considered in the prisoner's case." *Shoop v. Twyford*, 596 U.S. 811, 820 (2022) (citing *Shinn*, 596 U.S. at 389–90).

AEDPA restricts a federal habeas court's consideration of evidence developed outside the state court record if a petitioner failed to develop the factual basis of his claim in State court:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A)    the claim relies on—
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)–(B); *see also Shinn*, 596 U.S. at 382 (affirming the prerequisites in § 2254(e)(2) apply only "when a prisoner 'has failed to develop the factual basis of a claim.'"). Although § 2254(e)(2) mentions evidentiary hearings, it applies to consideration of new evidence for any purpose. *Shinn*, 596 U.S. at 389 (stating, "[w]hen a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied.") (relying on *Holland v. Jackson*, 542 U.S. 649, 653 (2004)).

For purposes of § 2254(e)(2), the term "fail" means "the prisoner must be 'at fault' for the undeveloped record in state court." *Williams v. Taylor*, 529 U.S. 420, 432 (2000) ("[A] failure to

develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel.") "Diligence for purposes of [§ 2254(e)(2)'s] opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." *Id.* at 435. "[A] person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." *Id.* at 432. While confined to prison, a prisoner "is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record." *Martinez*, 566 U.S. at 12.

### 2.    Additional Background

Before trial, the parties entered into a stipulation acknowledging the defense experts may view the videos and images at issue, and make enhanced copies of specific portions, but may not retain copies for any reason. The stipulation prohibits Shue from having personal possession of the videos and images. (ECF No. 29-2.)

Detective Ramirez's forensic examination report states many of the video files found on Shue's laptop bear a "created date" of "12/31/1979" or "1/1/1980," modification dates in 2007 and 2011, and access dates in 2011 and 2012. (ECF No. 42-2.) At trial, Detective Ramirez's forensic report concerning the computer files was not admitted as evidence, but he and the parties referred to the report during his examination. (ECF No. 32-1 at 48–53, 98–110.) As discussed above, Ramirez offered an explanation for discrepancies between the creation, modification, and access dates listed in the laptop for the video files, and the dates of the events depicted in the videos. Defense counsel cross-examined Ramirez about the security of the forensic examination of the videos. (*Id.* at 81–82.) Trial counsel did not present trial testimony from a defense expert concerning the computer files. In closing argument, defense counsel emphasized the defense theory was that H.I. made the videos herself. Counsel urged the jury to notice that in two videos, H.I. looked directly at the camera, as if she was aware of its existence, and there was testimony that H.I. knew how to use a video camera. (ECF No. 35-1 at 117.)

///

Following Shue's direct appeal, Shue's appellate counsel requested the appointment of postconviction counsel in part because Shue was not permitted to possess the discovery, *e.g.*, the computer files and photographs, due to its sensitive and contraband nature. The request was denied as premature because Shue had not yet filed a state postconviction petition. (ECF No. 62-1 at 10–15.) Shue filed a written motion for appointment of postconviction counsel that was denied for the same reason. (ECF Nos. 37-4; 37-7; 37-18 at 4.) Shue later filed a *pro se* state postconviction petition along with a motion for appointment of postconviction counsel. (ECF Nos. 37-8; 37-9.) The petition alleged, among other things, that trial counsel was ineffective in failing to conduct an "independent investigation into any of the property," because "claims of tampering were made," and counsel "should have tried to discover when and how the imagery got on the computer," but Shue did refer to Mare or attached Mare's expert declaration. (ECF No. 37-8 at 8.) The state district court denied the petition and request for counsel and determined the claim of ineffective assistance of counsel was a "naked" assertion and "suitable for summary denial," but also rejected the claim on the merits. (ECF No. 37-18 at 7–8.)

Shue filed a pro se appeal from the denials of his motion for appointment of counsel and the petition. Shue explained that he requested the appointment of counsel to investigate and review items to which Shue was denied access, and to conduct an evidentiary hearing and develop the record. He requested appointment of counsel for his appeal from the denial of the petition. The Supreme Court of Nevada denied the request for counsel and affirmed the state district court's determinations. (ECF Nos. 24-9 at 6–9; 24-10.)

### 3.     Analysis of Ground I

The state-court record shows that Shue was not at fault for the failure to develop the state court record to support his claims that trial counsel was ineffective in failing to hire a forensic computer expert. *Williams*, 529 U.S. at 432–35. Counsel for Shue, but not Shue, was permitted access to the laptop, camera, and files. Access to those items was necessary to pursue Shue's claims that trial counsel was ineffective in failing to conduct an independent investigation related to tampering or creation of the videos and photographs discovered on Shue's laptop. Shue was indigent and incarcerated. Although Shue's appellate counsel requested the court appoint counsel

(who could take possession of the discovery and develop a state court record), and explained Shue's inability to access the discovery, each of Shue's requests for counsel for state-postconviction proceedings were denied. Under the circumstances, Shue made a reasonable attempt, in light of the information available at the time, to investigate and pursue his claim in state court and he is not at fault for the failure to develop the factual basis for the claim. Because Shue is not at fault for the failure to develop the factual basis for his claim in state court, he need not meet the prerequisites of § 2254(e)(2) in order for this Court to consider Mare's expert declaration for the purpose of determining whether Shue can establish a substantial claim of ineffective assistance of trial counsel under *Martinez*.

Before considering Mare's declaration, however, the Court notes that it granted Shue's motion for discovery requesting an order directing the Metro Computer Forensics Lab make available to Mare, all of the digital devices in this case, or forensic copies thereof, including the forensic images and videos from the laptop. (ECF Nos. 16; 47.) The discovery deadline was extended to December 22, 2022—well past the date of Mare's declaration, October 6, 2021 (ECF No. 24-13)—to accommodate Mare's schedule and permit him access to the devices and files. (ECF No. 53.) Shue did not file a supplemental expert declaration after the expiration of the deadline to complete his discovery in this proceeding.

Turning to the analysis under *Martinez*, the Court finds Mare's declaration provides no factual basis on which to conclude trial counsel's failure to hire a forensic expert was either deficient or prejudicial under *Strickland*. *Martinez*, 566 U.S. at 14–17. Mare's declaration predates Mare's access to the discovery and includes only speculation. (ECF No. 24-13.) In his declaration, Mare states that he received a copy of the indictment and Detective Ramirez's testimony and report. Mare asserted he could not determine whether Ramirez completed or omitted "hash values" from his report, which Mare claims may be used to "validate evidence integrity or corruption," and to "locate duplicate videos/images that have [a] different name or different metadata." Mare nowhere indicates he conducted a hash-value analysis with results in Shue's favor even after he was permitted access to the discovery. Mare's declaration notes that Ramirez's report fails to address the inconsistencies in the creation dates for the video files; however, Mare does not

acknowledge Ramirez's trial testimony explaining how the dates on devices can be changed or manipulated such that it is not possible to determine an accurate date on which a computer file was created, modified, accessed, or downloaded to a computer. Mare's declaration states he "may or may not" be able to determine the reason for the inconsistencies if presented with the opportunity to analyze the devices. Shue presents no evidence that when Mare had access to the devices, he analyzed them and produced results that are favorable to Shue. Apart from Mare's declaration, Shue presents no factual basis to support his claim that trial counsel was ineffective in failing to consult a forensic computer expert. As Mare's declaration fails to provide any factual basis to support the claim, the claim is insubstantial, *Martinez*, 566 U.S. at 14–17, and Shue fails to overcome the procedural default of this claim. Ground I is therefore dismissed as procedurally defaulted.

### B.      Ground II—Sufficiency of the Evidence

Shue alleges the State presented insufficient evidence in violation of due process to convict him of (1) use of a minor as the subject of a sexual portrayal in a performance; and (2) child abuse and neglect. (ECF Nos. 23 at 10–14; 70 at 11–16.) In Shue's direct appeal, the state supreme court determined the State presented sufficient evidence to support the convictions. (ECF No. 24-5 at 17 n.11.) For the reasons discussed below, the Court finds the state supreme court's determination is neither contrary to, nor constitutes an unreasonable application of, federal law as determined by the Supreme Court, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Federal habeas relief is denied for Ground II.

### 1.      Applicable Legal Principles

According to *Jackson v. Virginia*, a jury's verdict must stand if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319, 324 (1979) (emphasis in original). The *Jackson* standard is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. A reviewing court, "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not

1  affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the
2  prosecution, and must defer to that resolution." *Id.* at 326.

3      Where circumstantial evidence is used to establish guilt, the Supreme Court has held that
4  it is "intrinsically no different from testimonial evidence" because although "circumstantial
5  evidence may in some cases point to a wholly incorrect result" this is "equally true of testimonial
6  evidence." *Holland v. United States*, 348 U.S. 121, 140 (1954) (rejecting contention that
7  circumstantial evidence must exclude every hypothesis but that of guilt). "In both instances, a jury
8  is asked to weigh the chances that the evidence correctly points to guilt against the possibility of
9  inaccuracy or ambiguous inference," and "[t]he jury must use its experience with people and events
10 in weighing the probabilities." *Id.* "If the jury is convinced beyond a reasonable doubt, [the
11 Supreme Court requires] no more." *Id; see also Jackson*, 443 U.S. at 324–26 (finding
12 circumstantial evidence sufficient to prove specific intent to kill).

### 2.    Analysis of Ground II

#### a.    Use of Minor as Subject of Sexual Portrayal in a Performance

15     Shue was convicted of violating Nev. Rev. Stat. § 200.710 (ECF Nos. 29-6; 62-5), which
16 makes it a crime when, among other things, a person knowingly "uses, encourages, entices, coerces
17 or permits a minor to be the subject of a sexual portrayal in a performance" regardless of whether
18 the minor is aware that the sexual portrayal is part of a performance. Nev. Rev. Stat. § 200.710(2).
19 "Performance" means any . . . film, photograph, computer-generated image, electronic
20 representation . . . or other visual presentation. Nev. Rev. Stat. § 200.700(1). "Sexual portrayal" is
21 "the depiction of a person in a manner which appeals to the prurient interest in sex and which does
22 not have serious literary, artistic, political or scientific value." Nev. Rev. Stat. § 200.700(4).

23     Shue contends the State presented insufficient evidence of "sexual portrayal" as required
24 for his convictions for use of a minor as the subject of a sexual portrayal in a performance, on the
25 grounds that the videos of H.I. and K.I. do not depict sexual acts or intercourse and the up-skirt
26 photograph does not depict nudity. He claims the videos and photograph therefore do not appeal
27 to "the prurient interest in sex." (ECF Nos. 23 at 11–13; 70 at 11–14.) The respondents contend
28 rational jurors could conclude the videos and up-skirt photograph are sexual portrayals. (ECF No.

64 at 10–12.) The Court finds the state supreme court's determination that there is sufficient evidence to support the convictions for use of a child in the production of a sexual portrayal in a performance is objectively reasonable.

H.I. testified she told Anita that Shue took photographs of her cleavage and touched her inappropriately. Shue admitted he found H.I. attractive and had romantic feelings toward her. On the day before his arrest, Shue took a photograph under H.I.'s skirt and kissed H.I. on the mouth. He also told H.I. he was only in a relationship with Anita to be near H.I. The State presented a large number of *sub rosa* videos taken over a period of time that captured minors H.I. and K.I. in the bathroom of their home performing bathroom activities in the nude. Some of the videos depicted Shue setting up the camera in the bathroom. One video depicted H.I. in a hotel bathroom in California. The State presented photographs found on Shue's laptop that depicted minor males engaging in fellatio and posing nude. With the exception of the up-skirt photograph, the videos and photographs were found on Shue's computer inside hidden folders labeled "Yummm" and "Hmmm." Shue's computer was seized from his desk at his alternate residence where he had nearby lubricant, condoms, and baby wipes. Shue testified that he permitted H.I. access to his laptop, where he stored videos of adults having sexual intercourse at Burning Man and videos that depict him and Anita having sexual intercourse, and he told H.I. there were videos of him having sex with Anita on the laptop. A rational juror could infer that, even though the videos of H.I. and K.I. did not depict sexual acts, and the photograph under H.I.'s skirt did not depict nudity, the videos and photograph constituted sexual portrayals because, under the circumstances, they depicted the minors in a manner which appeals to the prurient interest in sex, and does not have serious literary, artistic, political, or scientific value. Nev. Rev. Stat. § 200.710(2).

### b.    Child Abuse and Neglect

Shue contends there is insufficient evidence of mental suffering to warrant the conviction for child abuse. (ECF Nos. 23 at 13–14; 70 at 14–16.) The respondents contend the State presented sufficient evidence to convict Shue of child abuse under Nev. Rev. Stat. § 200.508 because the evidence showed Shue deliberately placed H.I. in situations where she may endure mental suffering as a result of abuse in the form of sexual exploitation. (ECF No. 64 at 12–13.)

At the relevant time, Nev. Rev. Stat. § 200.508 made it a crime to willfully cause a child who is less than 18 years of age to . . . be placed in a situation where the child may suffer . . . mental suffering as the result of abuse or neglect. Nev. Rev. Stat. § 200.508(1)(b)(1), *as enacted by* Laws 2003, c. 2, § 23, eff. March 5, 2003. "Abuse or neglect" means, among other things, "sexual exploitation . . . as set forth in [Nev. Rev. Stat. § 432B.110] . . . under circumstances which indicate that the child's health or welfare is harmed or threatened with harm." Nev. Rev. Stat. § 200.508(4)(a), *as enacted by* Laws 2003, c. 2, § 23, eff. March 5, 2003. "Sexual exploitation" includes ". . . allowing . . . a child . . . [t]o engage in [f]ilming, photographing or recording on videotape . . . the exhibition of a child's genitals . . . ." Nev. Rev. Stat. § 432B.110. The jury was instructed on these definitions and requirements. (ECF No. 34-3 at 17–26.)

Viewing the evidence in the light most favorable to the prosecution, a rational juror could conclude that Shue sexually exploited H.I. by repeatedly and secretly allowing her genitalia (ECF No. 35-1 at 107) to be filmed over a long period of time. Nev. Rev. Stat. § 432B.110. A rational jury could furthermore conclude Shue's actions constituted child abuse because the sexual exploitation was conducted under circumstances which indicated H.I.'s health or welfare was threatened with harm. *See supra* at p. 15. Nev. Rev. Stat. § 200.508(4)(a). Finally, a rational jury could conclude the sexual exploitation and abuse of H.I. placed her in a situation where she *may* experience mental suffering as H.I. testified she was embarrassed about the discovery and exposure of the videos. Nev. Rev. Stat. § 200.508(1)(b)(1).

## C.    Ground III—Disproportionate Sentence

Shue contends his sentence of an aggregate of 10 years to life imprisonment for the crimes associated with the videos and up-skirt photograph, is grossly disproportionate to the severity of his crimes in violation of the Eighth Amendment, because the videos and photograph do not depict sexual activities. (ECF Nos. 23 at 15–16; 70 at 16–19.) This Court previously found Ground III procedurally defaulted and deferred deciding whether Shue could overcome the default until its analysis of the merits. (ECF No. 50 at 5.) Shue contends he can establish cause to overcome the procedural default because he exhausted a claim that appellate counsel was ineffective in failing to assert this claim on direct appeal. (ECF Nos. 23 at 15–16; 70 at 16–19.) The respondents claim

Shue cannot overcome the procedural default because he fails to establish his sentence is grossly disproportionate to the crimes of conviction. (ECF No. 64 at 15–16.) For the reasons discussed below, the Court concludes Shue establishes cause to overcome the procedural default but fails to establish prejudice, and therefore Ground III will be dismissed as procedurally defaulted or, alternatively, on the merits.

### 1.    Applicable Legal Principles

The Eighth Amendment forbids sentences that are "grossly disproportionate" to the crime. *Graham v. Fla.*, 560 U.S. 48, 59–60 (2010). In non-capital cases, a court must first compare the gravity of the offense with the severity of the sentence to determine whether it is one of the "rare" cases which leads to an inference of gross disproportionality. *Id.* (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (opinion of KENNEDY, J.); *see also Solem v. Helm*, 463 U.S. 277, 289–92 (1983) (explaining that the court weighs the criminal offense and penalty "in light of the harm caused or threatened to the victim or society, and the culpability of the offender" and agreeing that "'[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare . . . .'") (internal citation omitted); *see also Norris v. Morgan*, 622 F.3d 1276, 1290 (9th Cir. 2010) (stating, "[w]e compare the harshness of the penalty imposed upon the defendant with the gravity of his triggering offense and criminal history.") (citing *Ewing v. California*, 538 U.S. 11, 28–29 (2003); *accord Ramirez v. Castro*, 365 F.3d 755, 767–70 (9th Cir. 2004)). "'[I]n the rare case in which . . . [the] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Graham*, 560 U.S. at 60 (quoting *Harmelin*, 501 U.S. at 1005 (opinion of KENNEDY, J.)). "If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." *Id.*

The Supreme Court has stated that "[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing

convicted criminals." *Solem*, 463 U.S. at 290. Generally, as long as the sentence imposed does not exceed statutory limits, it will not be overturned on Eighth Amendment grounds. *See United States v. Parker*, 241 F.3d 1114, 1117 (9th Cir. 2001).

At the relevant time in Nevada, the proscribed sentence for the commission of child abuse & neglect was "a minimum term of not less than 1 year and a maximum term of not more than 6 years." Nev. Rev. Stat. § 200.508(1)(b)(1), *as enacted by* Laws 2003, c. 2, § 23, eff. March 5, 2003. The proscribed punishment for use of a minor under the age of 14 as the subject of a sexual portrayal in a performance is "for life with the possibility of parole, with eligibility for parole beginning when a minimum of 10 years has been served," and the punishment for the use of a minor who is 14 or older as the subject of a sexual portrayal in a performance, is "for life with the possibility of parole, with eligibility for parole beginning when a minimum of 5 years has been served." Nev. Rev. Stat. § 200.710; 200.750.

### 2.    Additional Background

The Supplemental Presentence Investigative Report recommended the state district court impose a sentence of 1–3 years for count 1 (child abuse of H.I.); a consecutive sentence of 5 years to life for count 2 (use of H.I. as the subject of a sexual portrayal); concurrent sentences of 5 years to life for counts 3, 6, 9, 12, 15, 18, 21, 24, and 27–38 (use of H.I. as the subject of a sexual portrayal); and concurrent sentences of 10 to life for counts 4, 7, 10, 13, 16, 19, 22, and 25 (use of K.I. as the subject of a sexual portrayal). (ECF No. 40-2.)

At sentencing, the State argued Shue deserved to spend the rest of his life in prison because he lied when he denied filming the videos, wrongfully accused H.I. of creating the videos, and took numerous videos the jury did not see. The State argued the circumstances indicated the videos were no longer enough for Shue and he was escalating to physical contact. The State asked for 19 to 48 years for count 1 (child abuse of H.I.); consecutive sentences of 10 years to life for the 8 convictions for the use of K.I. as a subject of a sexual portrayal; and consecutive sentences of 5 years to life for each of the 21 convictions for the use of H.I. as a subject of a sexual portrayal, concurrent with the convictions involving K.I. (ECF No. 73-4 at 4–11.) Defense counsel argued for minimum concurrent sentences and that the State's request for multiple consecutive sentences

of 10 years to life for convictions involving use of K.I. as a subject of a sexual portrayal was

disproportionate to the severity of the crimes. (*Id.* at 14–15.)

The trial court stated it considered Shue's actions compared to other defendants:

[DEFENSE COUNSEL]: [B]ut to argue that these are multiple 10 to life sentences, he should get these run back-to-back like he's a—I've had murderers that commit—

THE COURT: Right. [Defense counsel], you know P and P looks at this defendant compared to other defendants. The Court looks at this defendant compared to other defendants. And, you know, I'm aware they have defendants committing sexual assaults on minors and they get probation. So—

[DEFENSE COUNSEL]: Well, they get their information—

THE COURT: —the Court's aware of where this—

[DEFFENSE COUNSEL]: —from the DA's Office.

THE COURT: —of where—meaning that's negotiated. You know, the Court has its own opinion of the pictures. I don't need [the prosecutor] to tell me what the pictures look like. I don't need you to tell me . . . —what the pictures look like because I sat here and I watched the pictures. And, you know, again, I think P and P takes that into consideration where he kind of falls and—yes, we had a—we had—you know, I don't think we had the worst people on this week than Mr. Shue in my estimation in terms of his conduct and the lifetime effect on the victim. So—you know. I think your point on that is well taken. Like I said, maybe not today, but just this week, in my estimation, we have people who've committed more egregious conduct, reference these types of crimes, and in my opinion have probably had a more detrimental impact on the lives of their victims.

(*Id.*) The trial court sentenced Shue to an aggregate sentence of imprisonment for life with the

possibility of parole after 10 years, as follows: 2–6 years imprisonment for count 1 (child abuse &

neglect of H.I.); a consecutive sentence of 5 years to life imprisonment for count 2 (use of H.I. as

the subject of a sexual portrayal); concurrent sentences of 5 years to life imprisonment for the 20

counts of use of H.I. as the subject of sexual portrayal; and concurrent sentences of 10 years to life

imprisonment for 8 counts for the use of K.I. as the subject of sexual portrayal. (ECF No. 62-5.)

### 3.    Analysis of Ground III

In federal habeas, the ineffective assistance of appellate counsel can serve as cause for a

procedural default of a substantive constitutional claim where the claim of ineffective assistance

itself is exhausted. *See Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000); *Murray*, 477 U.S. at

488–89. In his *pro se* state-postconviction-review petition, Shue alleged in relevant part that his

appellate counsel was ineffective for failing to challenge the life sentence as excessive for the

crimes as cruel and unusual punishment. (ECF No. 37-8 at 10.) Shue appealed the denial of his

petition and the state supreme court determined that he failed to establish appellate counsel was

ineffective:

> [A]ppellant, Joshua Shue contended that trial and appellate counsel were
> ineffective. To demonstrate ineffective assistance of counsel, a petitioner must
> show that counsel's performance was deficient in that it fell below an objective
> standard of reasonableness and that prejudice resulted in that there was a reasonable
> probability of a different outcome absent counsel's errors. *Strickland v.
> Washington*, 466 U.S. 668, 687–88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432–
> 33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). To prove ineffective
> assistance of appellate counsel, a petitioner must demonstrate that counsel's
> performance was deficient in that it fell below an objective standard of
> reasonableness, and resulting prejudice such that the omitted issue would have had
> a reasonable probability of success on appeal. *Kirksey v. State*, 112 Nev. 980, 998,
> 923 P.2d 1102, 1113–14 (1996) (applying *Strickland* to claims of ineffective
> assistance of appellate counsel). For purposes of the deficiency prong, counsel is
> strongly presumed to have provided adequate assistance and exercised reasonable
> professional judgment in all significant decisions. *Strickland*, 466 U.S. at 690. Both
> components of the inquiry must be shown. *Id.* at 697.
> . . . .
> [A]ppellant claimed that appellate counsel should have argued that his
> sentence was excessive and that lifetime supervision constituted a second
> punishment. Appellant failed to demonstrate deficient performance or prejudice.
> Appellant did not demonstrate that the relevant statutes are unconstitutional. See
> *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996). Appellant's sentences
> of 24 to 72 months for child abuse and neglect, life with the possibility of parole
> after five years for use of minor in production of pornography (over 14 years old),
> life with the possibility of parole after ten years for use of minor in production of
> pornography (under 14 years old), and 12 to 72 months for possession of child
> pornography fall within the parameters of the relevant statutes. See NRS
> 200.508(1)(b)(1); NRS 200.730(1); NRS 200.750(1), (2) . . . Therefore, the district
> court did not err in denying this claim.

(ECF No. 24-10 at 2–3, 8.)

Shue thus exhausted his claim that appellate counsel was ineffective in failing to assert a

claim that the sentence is disproportionate and has established cause for the procedural default of

his claim in Ground III. Because Shue has established cause for the procedural default of his claim

that his sentence is disproportionate, the Court next considers whether Shue has established the

resulting prejudice necessary to overcome the procedural default of his claim and finds that he fails

to do so because he fails to establish a meritorious claim of constitutional error.

Shue claims the severity of the offenses is less than for cases usually prosecuted under the

statutes as the videos do not depict sexual acts or intercourse. The state court record supports

Shue's characterization of the videos.[6] However, Shue overlooks the circumstances in evidence, e.g., the nude photographs of the minor males on his laptop (one involving fellatio between males), and his filming a large number of videos of H.I. and K.I. *sub rosa* over a period of time under circumstances that suggest the videotaping of the children in the nude depict the minors in a manner which appeals to the prurient interest in sex without any serious literary, artistic, political, or scientific value. *See supra*, at pp. 13–16. Although Shue had no prior criminal record, Shue's actions are proscribed by the plain language of the statutes of conviction, and the sentences are within the statutory parameters enacted by the Nevada legislature. The sentencing court stated that it took into consideration proportionality of the sentence, and a comparison with others convicted of the same offense, and accepted defense counsel's arguments that the severity of the crimes did not warrant the imposition of the State's request for multiple consecutive sentences of 10 years to life for the crimes involving K.I. Moreover, the severity of Shue's sentence is lessened by his eligibility for parole after serving ten years. *See Rummel v. Estelle*, 445 U.S. 263, 280–81 (1980) ("[B]ecause parole is 'an established variation on imprisonment of convicted criminals,' . . . a proper assessment of [a state's] treatment of [a habeas petitioner] could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life.") (internal citation omitted). Even considering Shue's lack of criminal record, the gravity of the offenses compared to the severity of the sentences do not rise to the level of a "rare" instance which leads to an inference of gross disproportionality. *Graham*, 560 U.S. at 59–60. Ground III is dismissed as procedurally defaulted, or alternatively, on the merits.

## IV.    Certificate of Appealability

This is a final order adverse to Shue. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See*

---

[6] In a footnote, Shue suggests that if the Court were to watch the videos, it would discover they are "relatively benign" and submits the Court should order the respondents to obtain a court order permitting the filing of the videos with this Court. (ECF No. 70 at 17 n.58.) A request for a court order must be made by motion. Fed. R. Civ. P. 7. The state court record supports Shue's claim that the videos do not depict any sexual activities and depict the children in the nude performing bathroom activities. As there is not dispute about the contents of the videos, it is unnecessary, without more, to *sua sponte* order the parties to file the video-trial exhibits.

28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right," and for claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.* Applying these standards, a certificate of appealability is denied.

## V.    Conclusion

**IT IS THEREFORE ORDERED:**

1. The Petitioner's Motion to Extend Time (Third Request) to file a reply brief in support of the petition (ECF No. 69) is GRANTED *nunc pro tunc* and the reply brief in support of the petition (ECF No. 70) is considered timely filed.

2. The petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 23) is DENIED.

3. A certificate of appealability is DENIED.

4. All requests for an evidentiary hearing are DENIED.

5. The Clerk of Court is directed to substitute Jeremy Bean for Respondent Calvin Johnson; and

6. The Clerk of the Court is directed to enter judgment accordingly and close this case.

DATED: 02/26/2024

KENT J. DAWSON
UNITED STATES DISTRICT JUDGE